STROUD  v.  RANKIN.

1. WRITTEN CONTRACT. *Merger of original liability.* *When.* Where a
   particular sum in a specified currency is accepted, by a written agree-
   ment, as payment for property, the original liability is merged into
   the written contract, upon which alone recovery can be had.

   Case cited: Kennel *v.* Muncey, Peck's R., 273; Code, Sections 1804–5.

2. SAME. *Same.* *Measure of damages.* Where the promise was to pay
   in current bank notes, or Confederate treasury notes, and the latter
   had ceased to be a currency when the obligation became due, then the
   value of bank notes that pass as currency at the time will be the
   measure of recovery.

   Case cited: Woodfolk *v.* Pratt, 1 Baxter, 348.

---

FROM DAVIDSON.

---

Appeal   from   the   Circuit   Court.    EUGENE CARY,
Judge.

M. M. BRIEN, JR., for Stroud.

CARUTHERS, GAUT & CARUTHERS for Rankin.

FREEMAN, J., delivered the opinion of the Court.

This suit is brought to recover the value of certain
corn, hogs, household, and other property, sold by
Stroud to Rankin, in the latter part of 1862.    Two
notes were given for the agreed price of the property
at or about the time of the sale, one for two hundred
and fifty dollars, as follows: " I promise to pay, *when
called on,* to the order of Geo. S. Stroud, two hundred
and fifty dollars in current bank notes or Confederate
Treasury notes, for value received, with interest from

Stroud *v.* Rankin.

this date;" the other a due-bill for thirty dollars, payable in current bank notes or Confederate Treasury notes.

Plaintiff sues on an account for the articles sold, claiming their value to be about four hundred dollars. The Circuit Judge held that he might recover for the value of the property, and was not bound to sue upon the notes, and the jury found a verdict for plaintiff.

The question presented is, could the seller recover the value of the property, as he might be able to prove it, in an open account? or was he bound to stand by and recover on the written promise or contract signed by the purchaser to pay the sums agreed on in the above writings, as according to their terms?

We might at once dispose of this question by following the case of *Woodfolk* v. *Pratt*, 1 Baxter, 348, in which we held that a party, in a case like this, was bound to recover according to the written agreement, and that to allow him to abandon this and sue for the value of the article sold, irrespective of his agreement, would be to enforce, not the contract of the parties, but to substitute a legal liability growing out of the receipt of the property, and the implied promise to pay in its place. In other words, to make a contract for the parties, and not enforce the one actually entered into by them. That this principle is correct, we have no doubts, and it is conclusive of this case. We deem it unnecessary to go into the general question of whether the giving a promis-

sory note or negotiable instrument is an extinguishment of an existing indebtedness, or a merger of the debt into a higher security, so that the original claim might not be sued on. Suffice it to say, that so far as that question is concerned, the abolition of the sanctity of the seal by §§ 1804–5 of the Code, has swept away the reason of much of the ruling on this question, and with the cessation of the reason the technical rules that grew out of it must cease to be operative, to a great extent at any rate. In most of the cases supposed to hold that the giving of a note leaves the original demand in full force, it will be found that the note itself was not an effective and valid security in the hands of the payee, as in the case of *Kennel* v. *Muncey*, Peck's R., 273, where the note was claimed to have been rendered invalid, and not enforceable, by reason of an alteration without the consent of the maker, or where it could not be enforced by reason of want of legal capacity of the maker to make such an instrument, or for some other like reason.

The principle we hold in the present case is, that where a party has given, and another accepted, an engagement in writing to pay for property a particular sum in a particular currency, or in property, that the creditor can not abandon this written contract and sue on the general legal liability to pay the value of the property purchased of another. That beyond all question the party must recover, if at all, on the contract to which, by the acceptance

Stroud *v.* Rankin.

of such written promise he has become a party, and in accordance with its terms.

As this case must go back for a new trial, and the facts are before us in a definite form, the notes themselves being set out in the record, it is proper that we lay down the rule by which the recovery of plaintiff—no other successful defence being interposed—should be governed. The promise is to pay in current bank notes or Confederate Treasury notes. Construing this obligation in the light of surrounding circumstances, it was evidently intended by the parties that it should be discharged in either the one or the other kinds of paper, as a currency passing in the business transactions of the country at the time. The value of this currency at the time the notes fell due in United States currency is the measure of the plaintiff's demand. If Confederate Treasury notes had ceased to be a currency when the notes became due, as it did at the end of the war, then the payment could not have properly been made in them, and the value of bank notes that passed as currency in the country would be the measure of recovery. We held this principle in an unreported case at last term at Jackson, in a case where the obligation was payable in bank notes or Confederate Treasury notes, and fell due after the war, and such we think the soundest and safest rule that can be adopted in such cases.

The result is, the case will be reversed and and remanded for a new trial.